**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Christine MAHONEY–MEYER,
Defendant—Appellant.**

**United States of America,
Plaintiff—Appellee,**

v.

**Margaret Jose, Defendant—Appellant.**

**Nos. 07–30430, 07–30432.**

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 29, 2008.*

Filed Sept. 22, 2008.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.

R.App. P. 34(a)(2).

268

Jane M. Kirk, Esq., Office of the U.S. Attorney, Yakima, WA, for Plaintiff–Appellee.

Scott E. Chapman, Esq., Randall, Blake & Cox, PLLC, Lewiston, ID, for Defen-

dant–Appellant, Christine Mahoney–Meyer.

Gregory L. Scott, Esq., Yakima, WA, for Defendant–Appellant, Margaret Jose.

Before: T.G. NELSON, HAWKINS, and BYBEE, Circuit Judges.

MEMORANDUM **

Christine Mahoney–Meyer and Margaret Jose ("Defendants") appeal their convictions of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), the object of which was to participate in the distribution of contraband cigarettes in violation of the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2342(a).[1] We affirm.

■ Although Defendants contend that their actions were authorized by tribal law, both the Coeur d'Alene tribal law and constitution are subject to limitations imposed by federal law. In *Baker*, 63 F.3d 1478, 1488–89 (9th Cir.1995), we clarified that the CCTA is one such applicable limitation. Defendants attempt to rely on *Mahoney v. Idaho*, 96 Idaho 59, 524 P.2d 187 (1974),

for the proposition that a state cannot tax on-reservation sales of cigarettes, but shortly after *Mahoney*, the Supreme Court held that a state "may impose at least 'minimal' burdens on the Indian retailer to aid in enforcing and collecting the tax" on non-Indians. *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 151, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980). Therefore, even assuming *arguendo* that defendants complied with the Coeur d'Alene taxation and licensing requirements, this would not excuse violations of federal law.

■ Nor does 25 U.S.C. § 4301, finding that "Indian tribes retain the right to enter into contracts and agreements to trade freely, and seek enforcement of treaty and trade rights," preclude the applicability of the CCTA. *Baker* rejected this argument, holding that "the CCTA does not restrict trading in cigarettes; it makes it a crime to fail to pay applicable state taxes on cigarettes subject to tax." *Baker*, 63 F.3d at 1485.

Defendants' reliance on *United States v. Smiskin*, 487 F.3d 1260, 1264 (9th Cir. 2007), holding that the CCTA did not apply to the Yakama Tribe because that "would abrogate the rights guaranteed by Indian treaties," is misplaced. The Coeur d'Alene Tribe is not a signatory to any treaty containing language analogous to that discussed in *Smiskin*. Rather, the treaty language cited by Defendants states

---

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

1. The CCTA prohibits shipping, transporting, receiving, possessing, selling, distributing, or purchasing contraband cigarettes. 18 U.S.C. § 2342. Contraband cigarettes are defined as more than 10,000 cigarettes that "bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp...." 18 U.S.C. § 2341. Under Washington state law,

cigarette packages must bear stamps indicating that taxes have been paid. Wash. Rev. Code § 82.24.030. Native Americans may purchase unstamped cigarettes for resale to Native Americans if they obtain pre-approval from the Washington Department of Revenue. Wash. Admin. Code § 458–20–192. In the absence of preapproval, "unstamped cigarettes destined for sale to reservation Indians are contraband." *United States v. Baker*, 63 F.3d 1478, 1487 (9th Cir.1995) (citing Wash. Admin. Code § 458–20–192).

only that the Coeur d'Alene "promise that all white persons shall travel through their country unmolested, and that no Indians hostile to the United States shall be allowed within the limits of their country." Unlike the Yakama Treaty of 1855 discussed in *Smiskin*, this language does not guarantee the Coeur d'Alene Tribe any rights that might be infringed upon by a state's pre-notification requirement. *See id.*

■ Neither Washington state law nor the CCTA is unconstitutionally vague as applied to defendants' conduct. *Baker* put defendants on notice that the CCTA applies to Indians, that it classifies unapproved, unstamped cigarettes as contraband, that federal law does not preempt Washington's cigarette tax scheme, and that dealers' "knowledge of cigarette taxing requirements can be presumed." *Baker*, 63 F.3d at 1486–87, 1490, 1492. Defendants' claim that it was unclear whether Washington law required wholesalers to give pre-notification is also unavailing because Defendants provided no evidence that they were licensed as wholesalers under Washington state law. Wash.Rev. Stat. § 82.24.040.

■ Defendants' argument that no predicate act exists because the incident of tax and pre-notification obligation fall upon the first taxable event in Washington is foreclosed by *United States v. Gord*, 77 F.3d 1192, 1194 (9th Cir.1996). *Gord* rejected the argument that the CCTA only prohibits possession of unstamped cigarettes if taxes are due, concluding instead that unstamped cigarettes are contraband under the CCTA unless they both "were preapproved by the Washington Department of Revenue and were sold to Native Americans." *Id.* As noted in *Baker*, although Washington's tax scheme "does not impose any tax on reservation Indians," it does impose the "permissible, minor burden" on Indian retailers of "prepay[ing] taxes to be collected from their non-Indian consumers." *Baker*, 63 F.3d at 1491.

■ Finally, defendants argue that they had no duty to pre-notify or to collect Washington state tax because they did not conduct business in Washington and did not participate in transporting the cigarettes into Washington. Participation in all elements of a predicate act, however, is not necessary to show a conspiracy. *Salinas v. United States*, 522 U.S. 52, 63, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997). *Salinas* holds that a "conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense," noting that "[i]f conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators." *Id.* at 63–64, 118 S.Ct. 469.

*Salinas* noted that even a person "incapable of committing the substantive offense" can be liable for conspiracy. *Id.* at 64, 118 S.Ct. 469. All that is necessary to support a conspiracy conviction under *Salinas* is that the conspirator "intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense." *Id.* at 65, 118 S.Ct. 469. Defendants' conduct need not have taken place in the State of Washington to fulfill this standard.

**AFFIRMED.**